UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Mohamed Hisam Najib**,

            Plaintiff,            Case No. C2: 03-CV-1269
    v.                                            JUDGE GREGORY L. FROST
                                                               Magistrate Judge Abel

**Meridian Medical Technologies, Inc. et al.**,

            Defendants.

## OPINION & ORDER

Presently before the Court for consideration is a motion for summary judgment filed by Defendants Meridian Medical Technologies, Incorporated and King Pharmaceuticals, Incorporated ("Defendants"). (Doc. # 49). Defendants move for summary judgment on Plaintiff Mohamed Hisam Najib's ("Plaintiff") remaining claims. *Id.* Plaintiff filed a memorandum in opposition to the Defendants' motion (Doc. # 50) and the Court did not permit a reply. (Doc. # 48). For the reasons that follow, the Court **DENIES** the motion. (Doc. # 49).

### BACKGROUND

Plaintiff is an Ohio resident. He has asthma and his doctor prescribed epinephrine for Plaintiff to use when he suffered asthma attacks. Specifically, Plaintiff's doctor prescribed the EpiPen, which is a self-contained auto-injectable unit containing one dose of epinephrine.

Defendant Meridian's principle place of business is in Maryland. Meridian manufactures the EpiPen. Defendant King purchased Meridian in 2003. As such, Meridian is a wholly owned subsidiary of Defendant King, and King is Meridian's successor in interest. King's principle

place of business is in Tennessee.[1]

On April 26, 1997, Plaintiff suffered an asthma attack.[2] He removed the EpiPen from its packaging and Campbell unsuccessfully attempted to remove the gray cap. (Campbell Dep. 19, 23, 24). Campbell had previously read the directions for how to use the EpiPen and had seen Plaintiff use the EpiPen on himself. *Id.* at 13, 19, 23, 24. Campbell then gave the EpiPen to Plaintiff and he was ultimately able to get the cap off. *Id.* at 24. However, when the cap came off, the EpiPen "just kind of like exploded. The gray cap came off, but just like everything fell apart at that point." *Id.* at 24. According to Campbell, the "needle went like stabbing into the floor, the title [sic] floor. I remember–I can remember just kind of sticking up from the floor, bent. I know the tubing just kind of went flying across the room." *Id.* at 25. The vial containing the epinephrine was connected to the bent needle. *Id.* at 26-27. Thus, Plaintiff was left holding nothing. *Id.* at 28.

Plaintiff unsuccessfully attempted to inject the epinephrine by stabbing himself with the bent needle. *Id.* at 30. Plaintiff then passed out. *Id.* Campbell called 911 and began giving Plaintiff mouth-to-mouth resuscitation for about seven (7) minutes before the paramedics

---

[1] Additionally, Plaintiff's complaint lists John Does # 1 - 10 as Defendants and describes them as "entities and/or businesses including predecessors-in-interest to and successors-in-interest of Meridian, . . . and/or persons whose names and addresses could not be discovered by Plaintiff as of the filing of this Complaint and who are liable to Plaintiff for injuries as alleged herein." The Court dismissed Plaintiff's claims against the John Doe Defendants for failure to serve on May 3, 2005. (Doc. # 42).

[2] Plaintiff's Complaint also states that he suffered an asthma attack on April 19, 1997. (Doc. # 1 ¶ 11). During that attack, Plaintiff alleges that the EpiPen failed to discharge the epinephrine. *Id.* at ¶¶ 12-14. Plaintiff's fiancé, Julie Campbell ("Campbell"), quickly injected Plaintiff with the drug by using a standard syringe and needle. *Id.* at ¶¶ 14-15; Campbell Dep. 41. Accordingly, Plaintiff does not claim that he was injured or suffered damages as a result of this incident. (Doc. # 50 at 2). Thus, the Court will exclusively address the second incident. *Id.*

arrived. *Id.* at 30-36. The paramedics transported him to a local hospital by ambulance. *Id.* at 39-40. When Campbell returned home after the incident, she was unable to find all of the EpiPen's components and she assumed that the paramedics had disposed of them. (Campbell Dep. 55). Campbell testified in her deposition that she did, and does, not know what happened to the components of the EpiPen. *Id.*

Plaintiff filed suit in state court in 1999, alleging that as a direct and proximate result of the EpiPen's failure, he suffered debilitating injuries as well as emotional distress and incurred substantial medical bills. (Doc. # 1; Doc. # 29 at 1). Plaintiff dismissed that case and subsequently re-filed his action in state court within the one-year filing deadline. (Doc. # 29 at 1). Defendants then removed the action to this Court. (Doc. # 1).

Plaintiff's current Complaint is essentially the same as his first, and he asserts the following common law or state law claims: (1) negligent design, manufacture, failure to warn, failure to provide clear instructions; (2) defect in manufacture or construction under Ohio Revised Code § 2307.74; (3) conformance to representation under Ohio Revised Code § 2307.77; (4) supplier liability under O.R.C. § 2307.78; and (5) breach of the implied warranty of merchantability. *Id.*

Defendants moved for full summary judgment, and the Court granted that motion on April 25, 2005. (Doc. # 41). Plaintiff appealed that decision, and the Sixth Circuit affirmed this Court's ruling in part and reversed it in part. (Doc. # 45). In particular, the Sixth Circuit affirmed the Court's dismissal of Plaintiff's supplier liability and negligence claims but reversed the Court's decision on Plaintiff's remaining claims. (Doc. # # 45, 46). The Sixth Circuit remanded those remaining claims to this Court for further consideration. *Id.*

Defendants now move the Court for summary judgment on Plaintiff's claims for products liability, failure to conform to representation under Ohio Revised Code § 2307.77, and breach of the implied warranty of merchantability.  (Doc. # 49).   Because the parties have completed briefing the matter, the Court now turns to an examination of that motion.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*,

477 U.S. at 251-52). However, in ruling on a motion for summary judgment, "a district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

Defendants urge the Court to enter judgment in their favor on Plaintiff's remaining claims by arguing that there is not sufficient evidence of each element of Plaintiff's claims and that judgment is warranted in their favor relative to Plaintiff's products liability claims because of Plaintiff's "negligent spoliation" of material evidence. (Doc. # 49 at 1, 3).

Defendants first contend that Plaintiff has produced insufficient circumstantial evidence to establish the requisite elements of his claims. *Id.* at 7-16. The Sixth Circuit flatly rejected Defendants' contention by holding:

> circumstantial evidence could be sufficient to withstand the summary judgment motion. As Plaintiff correctly asserts, Ohio law provides for this possibility. In *State Farm Fire & Cas. Co. v. Chrysler Corp.*, the Supreme Court of Ohio said that
>> [w]here direct evidence [of a product defect] is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence where a preponderance of that evidence establishes that the loss is caused by a defect and not other possibilities, although not all other possibilities need be eliminated.
>
> 523 N.E.2d 489, 493-94, 37 Ohio St. 3d 1, 5 (Ohio 1988).

(Doc. # 45 at 5-6).

The appellate court went on to consider the same evidence that is before this Court and concluded that Najib had presented enough evidence to warrant a jury determination on the issue

of causation. Namely, the Sixth Circuit noted "[Najib] and his fiancee both testified that the EpiPen in question was new, had not previously been removed from its box, and that they knew how to remove the cap." (Doc. # 45 at 7). As a result, the appeals court concluded that a genuine issue of material fact existed "on the issue of defect" and remanded the matter to this Court for further consideration. *Id.* Given that holding, the Court finds the Defendants' first argument to be meritless.

The Court finds the Defendants' alternative argument to be equally unavailing in addition to being insulting. Defendants assert that summary judgment is "the only appropriate sanction whereby Plaintiff failed to preserve all critical product components." (Doc. # 16 at 49). The elements of spoliation in Ohio, as articulated by the Sixth Circuit, are (1) "'pending or probable litigation involving the plaintiff"; (2) "knowledge on the part of defendant that litigation exists or is probable"; (3) "willful destruction of evidence by defendant designed to disrupt the plaintiff's case"; (4) "disruption of the plaintiff's case"; and (5) "damages proximately caused by the defendant's acts.'" *Hoffman v. CSX Transp., Inc.*, 2006 U.S. Dist. LEXIS 965, at *10 (S.D. Ohio 2006) (quoting *Herlik v. Continental Airlines*, 2005 U.S. App. LEXIS 21784, No. 04-3790, 2005 WL 2445947, at *6 (6th Cir. October 4, 2005)). Furthermore, the Sixth Circuit has emphasized the need for some threshold showing, under Ohio law, that evidence has been "intentionally altered or destroyed by a party or its expert before the defense had an opportunity to examine" the evidence. *See, e.g., Nationwide Mutual Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999) (emphasis added, internal citation omitted). Assuming, arguendo, that the elements may be "reversed" to apply to an allegedly spoliating plaintiff, the Court finds that genuine issues of material fact remain as to whether Defendants have satisfied several

elements of the Ohio test. *See, e.g., Beil v. Lakewood Eng. and Mfg. Co.*, 15 F.3d 546, 553 (6th Cir. 1994) (discussing alleged spoliation by plaintiff).

Najib was unconscious and not breathing when the paramedics arrived. It is doubtful that Najib's thoughts, to the extent that they were occurring, were on anything but survival at that time. The medics took him to a hospital, and when Campbell returned home, the remaining components of the EpiPen in question were nowhere to be found. (Campbell Dep. 55). Campbell stated in her deposition that she did not know what had happened to the EpiPen's parts. *Id.* Perhaps as a result of these facts, Defendants fail to even assert that Najib "intentionally altered or destroyed" the EpiPen at issue. Thus, contrary to the Defendants' contention, the only appropriate sanction under these circumstances in the Court's mind involves Rule 11 sanctions against Defendants for raising such an insolent argument, not judgment in their favor.

Defendants' motion for summary judgment is **DENIED**. (Doc. # 49).

**IT IS SO ORDERED.**

    /s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**